to U.S. v. Hurlbut, which has been combined with Gillespie. That's correct, your honor. May it please the court, these two appeals squarely address the issue that was assumed in the last argument. Does Johnson apply to the guidelines residual clause at 4b 1.2? And the appellants are in a pretty unusual position and that the government is conceding this argument. They agree that the residual clause in the guidelines is unconstitutionally void for vagueness. That's under the due process clause. So the only thing we actually disagree on is the remedy here. Just because you guys agree on something, are you saying we have to agree to it, too? Absolutely not, your honor. So I was actually going to start by talking about why we agree. So I want to talk about a few of the big reasons that we agree on the issue. And the first is, most obviously, we're talking about the exact same residual clause. The words are identical. It's always been interpreted identically. So in Johnson, when the Supreme Court said... I don't think that's the pressure point of your argument, which more properly is how Pew affects the Johnson analysis in this case, and what it means for Tishner. Sure. We've got a circuit split on this issue about whether Johnson applies to the guidelines, so we better cut to the chase on that. All right, so since Tishner was issued, I mean the two big decisions that impacted are Pew and Johnson itself. Tishner rested on this notion that guidelines are merely advisory. They really can't... they don't have the sort of force of law that would give it... that would allow the vagueness doctrine to apply to it, the same way in Demarais the court said the ex post facto doesn't apply. In Pew, the Supreme Court made it very clear that the sentencing guidelines have the force of law, and they're treated as law because of the unique role that they play in sentencing, and not just sort of a casual role, but a legally mandated role. They are the starting point of sentencing. They provide the framework of sentencing, and I believe this court has said post Pew that under Pew, even if a sentence falls below the guidelines or above the guidelines, you can really call it a guideline sentence because the entire sentencing structure is legally mandated to revolve around the guidelines. And then of course in Johnson, it addressed another issue that this court discussed in Tishner, which is does the vagueness doctrine apply to sentencing provisions, which had been implied before but never addressed head-on. So in Johnson, of course, it's as clear as it can be, it applies to sentencing laws, and under Pew, the therefore, where we have the exact same residual clause that has been interpreted in the exact same way, then everything that Johnson said about the residual clause under ACCA applies here. Well, what Johnson actually said was that vagueness doctrine applies not only to statutes establishing the elements of That particular language is what the circuit split rests, as I understand, the Eleventh Circuit's decision, which went a different way than the Eighth Circuit, and so perhaps you can focus on that. Sure. Well, of course, guidelines don't fix sentences. Great, and of course Johnson was addressing a statute, so it makes sense that it would refer to statutes, but there is no question that the vagueness doctrine has been applied outside of statutes. The Supreme Court has applied it to administrative regulations. Those are laws. The Supreme Court, I don't think it got cited in the briefs, unfortunately, but in a case of Gentile versus State of Nevada, they applied it to court rules, the vagueness doctrine, and the guidelines is akin to an agency regulation, a court rule. These are all laws that govern how our system works, and the guidelines function as really, in many cases, perhaps more importantly than the maximum sentence, because the same way in Irizarry, the Supreme Court said a defendant doesn't necessarily have the right to notice that a particular court is going to go does not get the maximum sentence, but these are the structures that really frame sentencing in every single federal case, and that makes the guidelines different than other kinds of things. I think it was in Pew, they specifically rejected a government argument that the guidelines were sort of like a policy paper, or like a recommendation to the court, and they said they were much more than that, because the law requires the sentence structure to really be built around the guidelines, and I think it's because of that role that it's interesting to think about what would happen if Johnson doesn't apply to the guidelines, and the Matchett decision of the Eleventh Circuit provides kind of a good example of how that would work, which is because the guidelines, because a sentencing judge is required to start the sentencing by correctly calculating the guidelines, again, because the guidelines are so central to our sentencing process, to continue applying the residual clause at 4B1.2 is to say that sentencing courts are required to continue applying a provision that the subject to arbitrary enforcement, and even that's a black hole of uncertainty, and so that's, I mean, in part it's a practical problem, but it shows the centrality of the guidelines to the sentencing system that we have set up by law in the federal courts. Is there any distinction between the concerns underlying the ex post facto clause and the concerns underlying vagueness doctrine that might make a difference here? The concerns are somewhat different, and I will say that the Pew Court, there was a portion of the court that was only a plurality, and so it's a little bit unclear. Certainly ex post facto and the vagueness doctrine are both in part based on the right to notice, but the vagueness doctrine is arbitrary enforcement, and that is the aspect of vagueness that the Johnson court, the Johnson court didn't sort of specifically parse things out, but they were very concerned about the arbitrary enforcement by the courts in sort of grappling with over the years, okay, this statute is in and this statute is out, and what was the real basis of it, and looking back to James and Sykes and Chambers and the disagreements between the dissents and the majority opinion on how one was to decide whether it's in or out. So arbitrary enforcement was really at the core of Johnson, and it's at the core of the problem in the guidelines, and I think that's what motivated the Tenth Circuit in Madrid to hold that Johnson does apply to the guidelines because of the danger of arbitrary enforcement in each of the cases. Well, right, but the court didn't evaluate the distinction, and maybe there isn't any in terms of the animating principles underlying the ex post facto clause and vagueness doctrine, which was the thrust of my question. You focused on the arbitrary enforcement discussion in Johnson, and I have no quarrel with that, but the ex post facto law doesn't have anything to do with arbitrary enforcement concerns. That's correct. It's primarily focused on notice, although at least a plurality of the court talked about sort of a fundamental fairness aspect of the ex post facto clause in Pew, which is fairly similar to the sorts of concerns that underlie the vagueness doctrine. But I would submit too that, you know, in a court is planning on departing from the guidelines, but I think that's quite a few steps removed from the notion that we have no right to know what the guidelines say, that we have no right to know what the standard is that the court is required to apply and correctly calculate at every sentencing. Thank you. Ms. Altman. Thank you. Good morning, Your Honors. May it please the Court, my name is Elizabeth Altman and I represent the United States in this case. I do have to say that this is a very unusual circumstance. I have never done this before, but I don't have any disagreement with anything that Ms. Fite has said in her argument today, and in fact join in it 100%. The only issue where we differ is the remedy, which I'm happy to cover. I'm happy to answer any questions that you have regarding the application, of course. We've had a quick succession of decisions from other circuits, starting with the 11th and then the 8th and then the 10th most recently. Yes. And the 10th and the 8th accepted the government's confession of error, the 11th did not. Do you know what the status of those cases, are there certain petitions in progress? I believe, although I'm not sure. There would only be one in the 11th circuit. Yes, I'm not a hundred percent sure on that, but I Why shouldn't we send it back for a full reverse and remand and re-sentencing? Because the judges both, they were two different judges in this case, each of them made it clear that they were not relying on the guidelines in this case. First of all, we believe that it was plenary review, as we put in our brief, and so it's the defendant's burden to show that they had substantial rights that were violated, and in this case we just don't think that they can do that. With regard to Mr. Gillespie, the judge specifically said that the guideline range was not the driver of the sentence and in fact called the guidelines gobbledygook, which perhaps is why we're here today, at least part of it. Well right, but isn't it a principle in our law of guideline sentencing that if there's a mistake in calculating the guidelines, which this would be classified as a mistake in calculating the guidelines range, that's a procedural error that has to be corrected. That would be true if he had relied on the guidelines, and he specifically said that he wasn't relying on the guidelines. It's our position that there was an error and it was a procedural error, but because he did not, he specifically made a point of saying that he was not relying on the incorrect guidelines that the sentence he imposed. How much harm would there be if we sent it back and he imposed the same sentence? None. In either case there would be none. This court has in the past accepted the Palladino process with, you know, following Booker, they said it was the most efficient way to determine exactly what the judge had in mind, and it also was used following the Fair Sentencing Act. It worked well in both of those cases, and the government believes it should be used in these cases as well. In the second case also the judge specifically said that the driver of his sentence, he didn't specifically disregard the guidelines, but he said that the primary driver of the sentence was the defendant's dangerous behavior. So again, we're in the area where the suggest that the court find the residual clause, find overrule Tishner, find the residual clause vague, and send these cases back on limited remand. How much time? Well, you could take a whole two minutes. Thank you, Your Honor. I want to address a few things. First of all, there are a number of cases around the country where other circuits have simply sort of vacated and remanded based on the government's concession without even really issuing an opinion. So it does seem like, you know, the wave is going in terms of accepting the government's concession, it's just not resulting in a huge number of published opinions at this point. Probably not a bad idea. We would accept that, Your Honor. In currently a petition for hearing on Bonk that was filed about a month ago, and there's now been at least one amicus. Which one is it? In Matchett, the 11th Circuit opinion, finding that it does not apply to the guidelines, and there's at least one amicus brief in support of that, and it's still pending as of yesterday. And so if there's no further questions with that, I'll go on to the remedy, and really it's not an issue of remedy, I think it's an issue of the our argument that this interview is de novo for a couple of reasons. First of all, because the both of these defendants argued in the court below that the crime at issue was not a crime of violence. And this court has said that where you add additional authority between the time that you're in the district court and the Court of Appeals, supporting the argument that you made below, that's not a forfeited argument, it's not plain error review, you're hasn't made any argument that under existing law, or under previous law, or under anything, that the two crimes that in each of these cases, Gillespie's case or Hurlburt's case, is still a crime of violence. And that's the argument specifically that was made below. So we're talking de novo. Right, and even if we're here on plenary review, there's always a question of remedy, right? Because harmless error applies? Sure, but they have not raised any harmless error argument. And this wasn't a case, I don't know if it was implied that the judge in the Gillespie case said, you know, that he would have imposed the same sentence or something like that. There was nothing of that sort. He did, you know, criticize the guidelines in the context of sentencing, which frankly I think a lot of district judges do in the context of sentencing. But, you know, as this court has said, even in a court that goes below the guidelines, it's a guideline sentence because when the judge says, I'm going below the guidelines, it's a sentence that's still calibrated to the guidelines as calculated. Thank you. Thank you, counsel. Thanks to all counsel. The case will be taken under advisement.